## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **RADNOR HOLDINGS** | § | **Case No. 06-10894-(PJW)** |
| **CORPORATION**, *et al.,* | § | **Jointly Administered** |
| | § | |
| **Debtors.** | § | |
| ──────────────────── | § | |
| | § | |
| **THE OFFICIAL COMMITTEE OF** | § | **Civil Action No. 06-782 (***)** |
| **UNSECURED CREDITORS OF RADNOR** | § | |
| **HOLDINGS CORPORATION**, *et al.,* | § | |
| | § | |
| **Appellant,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **TENNENBAUM CAPITAL PARTNERS,** | § | |
| **LLC,** | § | |
| | § | |
| **Appellee.** | § | |
| ──────────────────── | § | |

### MOTION OF APPELLANT FOR LEAVE TO FILE CONSOLIDATED REPLY TO APPELLEES' OPPOSITION TO MOTION TO EXPEDITE APPEAL OF ISSUES 4 THROUGH 9 RELATING TO COMPENSATION OF COMMITTEE'S PROFESSIONAL ADVISORS, AND TO STAY ALL OTHER ISSUES ON APPEAL PENDING RESOLUTION OF THE EXPEDITED APPEAL

Appellant, the Official Committee of Unsecured Creditors of Radnor Holdings Corp., *et al.* (the "**Committee**"), by and through its undersigned counsel, hereby respectfully requests leave to file its consolidated reply (the "**Motion**") to the opposition of Tennenbaum Capital Partners, LLC, Special Value Expansion Fund, LLC, Special Value Opportunities Fund, LLC and Jose E. Feliciano (collectively, "**Tennenbaum**") and the objection of the Debtors (together, the "**Objections**") to the Committee's motion to expedite the appeal of Issues 4 through 9 relating to the compensation of the Committee's professional advisors, and to stay all other

issues on appeal pending resolution of the expedited appeal (the "**Reply**").  In support of its Motion, the Committee states as follows:

1.      The facts before this Court supporting an expedited appeal of Issues 4 through 9 of the Committee's Statement of Issues on Appeal, and a stay of the remaining issues, are simple and undisputed.  The purchaser of the Debtors' assets, Tennenbaum, has dictated by private agreement, with the Debtors, which professionals will get paid on account of their services in these bankruptcy proceedings, and which professionals will not.  Tennenbaum has wielded its control of the purse strings in a punitive manner, granting favored status to the Debtors' professionals while leaving the Committee with no ability to compensate its professionals adequately for their work below or on appeal.  As a result of the Bankruptcy Court's rulings-- approving a private agreement between the Debtors and Tennenbaum for the preferential allocation of professional fees without regard to the equal priority of those claims under sections 503(b)(2) and 507(a)(1) of the Bankruptcy Code--the Committee has effectively been deprived of its ability to prosecute its appeals. Indeed, that has been the strategy of the Debtors and Tennenbaum from the outset, as demonstrated by their tactics at the sale hearing, when they proposed that the Committee professionals should receive no payment at all unless the Committee agreed to withdraw all objections and appeals.  Because the Committee declined to abandon its appeals in exchange for its professional fees, Tennenbaum now asserts that the solution to the Committee's dilemma is to compel the Committee's counsel to work for the Committee for free on appeal, imposing an unrealistic, *de facto* contingency fee arrangement.

2.      Tennenbaum's forceful advocacy of a system under which creditors' committees would be incapable of retaining any professionals other than on a contingency basis, and wherein the equal priority of administrative claims is subject to subversion by private agreements

2

between interested parties, illustrates the need to expedite consideration of the Committee's professional fee issues. The Bankruptcy Court's rulings have seriously eroded the ability of the Committee to pursue its appeals in this case, as well as the ability of future creditors' committees to participate in bankruptcy cases and to carry out their essential role in ensuring a fair and honest administration and reorganization of the bankruptcy estate. If the Bankruptcy Court's rulings stand, creditors in the Committee's position will find it difficult if not impossible in the future to retain competent professional assistance, in the face of a constant threat that debtors and their asset purchasers could revoke the committees' financing as reprisal for any action that the debtors or purchasers find disagreeable. These serious public policy considerations, both in this case and going forward, are the basis for the Committee's Motion. If the professional fee issues are not decided first, the Committee will be left without professional assistance or the practical ability to proceed with its appeals, and this Court will be deprived of its appellate review.

3.    The Committee seeks to file the Reply to the Objections for the purpose of giving the Court an opportunity to review the Committee's response to the new arguments made by Tennenbaum and the Debtors in their Objections. The Committee's Reply is consolidated and addresses both Tennenbaum's and the Debtors' objections jointly. Because the Objections raise new issues such as mootness, standing and ripeness of issues before this Court, the Committee believes it is necessary to file the Reply. The Committee believes the Reply will aid this Court in ruling on the Motion.

4.    Finally, the filing of the Reply will not delay these proceedings, nor will it prejudice any party. The Reply simply addresses issued raised in the Objections for the benefit of this Court.

**WHEREFORE**, the Committee respectfully requests the entry of an Order granting it authority to file the Reply, a copy of which is attached hereto as <u>Exhibit 1</u>.

Dated: Wilmington, Delaware
February 7, 2007

GREENBERG TRAURIG, LLP

*Victoria W. Counihan*

Donald Detweiler (No. 3087)
Victoria Counihan (No. 3488)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
detweilerd@gtlaw.com
counihanv@gtlaw.com

-and-

Nancy A. Mitchell
Nancy A. Peterman
Francis A. Citera
**GREENBERG TRAURIG LLP**
77 West Wacker Drive, Suite 2400
Chicago, Illinois 60601
Phone: (312) 456-8400
Facsimile (312) 456-8435
mitchelln@gtlaw.com
petermann@gtlaw.com

Counsel for the Official Committee of Unsecured Creditors of Radnor Holdings Corporation, *et al.*

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **RADNOR HOLDINGS** | § | **Case No. 06-10894-(PJW)** |
| **CORPORATION**, *et al.*, | § | **Jointly Administered** |
| | § | |
| Debtors. | § | |
| | § | |
| _____ | § | |
| | § | |
| **THE OFFICIAL COMMITTEE OF** | § | **Civil Action No. 06-782 (***)** |
| **UNSECURED CREDITORS OF RADNOR** | § | |
| **HOLDINGS CORPORATION**, *et al.*, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | |
| | § | |
| **TENNENBAUM CAPITAL PARTNERS, LLC,** | § | |
| | § | |
| Appellee. | § | |
| _____ | § | |

## <u>CERTIFICATE OF SERVICE</u>

I, Victoria W. Counihan, being duly sworn according to law, deposes and says that she is employed by Greenberg Traurig, LLP, which is counsel for The Official Committee of Unsecured Creditors, for the above-captioned action, and that on the 7th day of February 2007, she caused copies of the *MOTION OF APPELLANT FOR LEAVE TO FILE CONSOLIDATED REPLY TO APPELLEES' OPPOSITION TO MOTION TO EXPEDITE APPEAL OF ISSUES 4 THROUGH 9 RELATING TO COMPENSATION OF COMMITTEE'S PROFESSIONAL ADVISORS, AND TO STAY ALL OTHER ISSUES ON APPEAL PENDING RESOLUTION OF THE EXPEDITED APPEAL* to be served upon the parties listed below in the manner indicated.

<u>VIA HAND DELIVERY:</u>

Gregg M. Galardi, Esq.
Mark L. Desgrosseilliers, Esq.
Sarah E. Pierce, Esq.
Skadden, Arps, Slate, Meagher& Flom, LLP
One Rodney Square
Wilmington, DE 19801
(Counsel to Debtors)


William Harrington, Esq.
Office of the U.S. Trustee
844 King Street
Room 2207, Lockbox 35
Wilmington, DE 19801



Mark D. Collins, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(Counsel to Tennenbaum Capital Partners, LLC)


Dated: February 7, 2007

<u>VIA FIRST CLASS, U.S. MAIL:</u>

Timothy R. Pohl, Esq.
Patrick J. Nash, Esq.
Rena M. Samole, Esq.
Skadden, Arps, Slate, Meagher& Flom, LLP
333 West Wacker Drive
Chicago, IL 60606
(Counsel to Debtors)


Kenneth Ostrow, Esq.
Gregory A. Bray, Esq.
Fred Neufeld, Esq.
Milbank, Tweed, Hadley & McCloy LLP
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017-5735
(Counsel to Tennenbaum Capital Partners,
LLC)

Victoria W. Counihan (No. 3488)
Greenberg Traurig, LLP
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
(302) 661-7000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **RADNOR HOLDINGS** | § | **Case No. 06-10894-(PJW)** |
| **CORPORATION**, *et al.*, | § | **Jointly Administered** |
| | § | |
| Debtors. | § | |
| | § | |
| | § | |
| | § | |
| **THE OFFICIAL COMMITTEE OF** | § | **Civil Action No. 06-782 (***)** |
| **UNSECURED CREDITORS OF RADNOR** | § | |
| **HOLDINGS CORPORATION**, *et al.*, | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | |
| | § | |
| **TENNENBAUM CAPITAL PARTNERS,** | § | |
| **LLC,** | § | |
| | § | |
| Appellee. | § | |
| | § | |

### APPELLANT'S CONSOLIDATED REPLY TO APPELLEES' OPPOSITION
### TO MOTION TO EXPEDITE APPEAL OF ISSUES 4 THROUGH 9
### RELATING TO COMPENSATION OF COMMITTEE'S PROFESSIONAL
### ADVISORS, AND TO STAY ALL OTHER ISSUES ON APPEAL
### PENDING RESOLUTION OF THE EXPEDITED APPEAL

Appellant, the Official Committee of Unsecured Creditors of Radnor Holdings Corp., *et al.* (the "**Committee**"), by and through its undersigned counsel, hereby respectfully submits this consolidated reply (the "**Reply**") to the opposition of Tennenbaum Capital Partners, LLC, Special Value Expansion Fund, LLC, Special Value Opportunities Fund, LLC and Jose E. Feliciano (collectively, "**Tennenbaum**") and the objection of the Debtors (together, the "**Objections**") to the Committee's motion to expedite the appeal of Issues 4 through 9 of the Committee's Statement of Issues on Appeal, relating to the compensation of the Committee's

professional advisors, and to stay all other issues on appeal pending resolution of the expedited appeal (the "**Motion**"). In reply to the Objections, the Committee states as follows:

## INTRODUCTION

The purchaser of the Debtors' assets, Tennenbaum, has dictated by private agreement with the Debtors which professionals will get paid on account of their services in these bankruptcy proceedings, and which professionals will not. Tennenbaum has wielded its control of the purse strings in a punitive manner, granting favored status to the Debtors' professionals while leaving the Committee with no ability to compensate its professionals adequately for their work below or on appeal. As a result of the Bankruptcy Court's rulings--approving a private agreement between the Debtors and Tennenbaum for the preferential allocation of professional fees without regard to the equal priority of those claims under sections 503(b)(2) and 507(a)(1) of the Bankruptcy Code--the Committee has effectively been deprived of its ability to prosecute its appeals. Indeed, that has been the strategy of the Debtors and Tennenbaum from the outset, as demonstrated by their tactics at the sale hearing, when they proposed that the Committee professionals should receive no payment at all unless the Committee agreed to withdraw all objections and appeals. Because the Committee declined to abandon its appeals in exchange for its professional fees, Tennenbaum now asserts that the solution to the Committee's dilemma is to compel the Committee's counsel to work for the Committee for free on appeal, imposing an unrealistic, *de facto* contingency fee arrangement.

Tennenbaum's forceful advocacy of a system under which creditors' committees would be incapable of retaining any professionals other than on a contingency basis, and wherein the equal priority of administrative claims is subject to subversion by private agreements between interested parties, illustrates the need to expedite consideration of the Committee's professional

fee issues. The Bankruptcy Court's rulings have seriously eroded the ability of the Committee to pursue its appeals in this case, as well as the ability of future creditors' committees to participate in bankruptcy cases and to carry out their essential role in ensuring a fair and honest administration and reorganization of the bankruptcy estate. If the Bankruptcy Court's rulings stand, creditors in the Committee's position will find it difficult if not impossible in the future to retain competent professional assistance, in the face of a constant threat that debtors and their asset purchasers could revoke the committees' financing as reprisal for any action that the debtors or purchasers find disagreeable. These serious public policy considerations, both in this case and going forward, support the Committee's Motion. If the professional fee issues are not decided first, the Committee will be left without professional assistance or the practical ability to proceed with its appeals, and this Court will be deprived of its appellate review.

The Objections contain various *ad hominem* attacks that do not merit consideration, and are not discussed in this Reply. Substantively, the Objections consist of six arguments: (1) this appeal is moot because any corrective action would unwind the sale of the Debtors' assets; (2) the professional fee issues are not ripe for adjudication because the Bankruptcy Court has not yet decided the parties' fee petitions; (3) the Committee lacks standing to appeal its professional fees; (4) the professional fee issues do not require expedited treatment because the Committee's professionals were retained on a contingency fee basis; (5) the relief requested by the Committee will harm the Debtors' estates; and (6) the Committee failed to comply with Bankruptcy Rule 8011. The Appellees are wrong as a matter of law and on the facts.

First, this appeal is not moot, because the professional fees paid under the Asset Purchase Agreement can be pooled and distributed *pro rata* on account of approved fee applications without unwinding the underlying sale. Second, the fee issues are ripe for adjudication, because

what is being challenged is the underlying private allocation scheme approved by the Bankruptcy Court, not the specific amount of the fees. Third, the Committee has statutory standing under the Bankruptcy Code, as well as a material interest in the compensation of its professionals. Fourth, there is simply no support in the orders of the Bankruptcy Court for the Appellees' suggestion that the Committee's professionals were retained on contingency. Fifth, the relief requested will not harm the Debtors' estates, other than restoring the equal, first priority status of administrative expense claims under sections 503(b)(2) and 507(a)(1) of the Bankruptcy Code. Finally, the Committee has complied with Bankruptcy Rule 8011, because the Motion is not an emergency motion. Accordingly, the Committee's Motion has merit and should be granted.

## ARGUMENT

**A.     This Appeal is Not Moot Because the Court Can Fashion
Relief Without Unwinding the Sale of the Debtors' Assets.**

Tennenbaum argues that the Committee's request for an expedited briefing schedule should not only be denied, but that the entire appeal should be dismissed under the doctrine of equitable mootness on the grounds that there is no practical relief that this Court could grant other than relief affecting the validity of the Debtors' asset sale.[1] That is wrong. The Court can grant relief that will not affect the sale, simply by ordering that the $7.3 million in professional fees provided for in the Sale Order be pooled and paid out on a *pro rata* basis for all professional fees and expenses approved in this case. That relief would not affect the total consideration paid by Tennenbaum under the Sale Order and the Asset Purchase Agreement, nor would it otherwise unwind or affect the validity of the sale. It would simply place the parties' professionals on an equal footing for purposes of distributing the proceeds of the sale.

---

[1]     The Committee notes that Tennenbaum has yet to bring a motion to dismiss the appeals and has raised the argument solely in opposition to the Committee's Motion. The Committee reserves its rights to respond more extensively to any further mootness arguments made by the Appellees.

The doctrine of equitable mootness provides that an appeal should be dismissed if implementation of the requested relief "would be inequitable," in that it would unwind a complex reorganization transaction after its consummation in bankruptcy. *See In re PWS Holding Corp.*, 228 F.3d 224 (3rd Cir. 2000) (*citing In re Continental Airlines*, 91 F.3d. 553 (3rd Cir. 1996)). Courts in the Third Circuit have considered five factors in determining if equitable mootness is appropriate: 1) whether the reorganization plan has been substantially consummated; 2) whether a stay has been obtained; 3) whether the relief requested would affect the rights of parties not before the court; 4) whether the relief affected would affect the success of the plan; and 5) the public policy of affording finality to bankruptcy judgments. *See In re Continental Airlines*, 91 F.3d 553, 560 (3d. Cir. 1996).

The Third Circuit addressed the issue of equitable mootness in *In re Zenith Electronics Corporation*, 329 F.3d 338 (3rd 2003). There, the United States Trustee objected to certain fees of the unofficial committee of equity security holders. The bankruptcy court allowed the fees to be paid and the Trustee appealed. The district court sustained the bankruptcy court's ruling. The Third Circuit reversed the bankruptcy court's ruling and held that the appeal was not equitably moot, finding that the district court abused its discretion in determining that the "substantial consummation" factor favored dismissing the appeal as equitably moot. *See id.* at 346. The Court stated that an appeal should not be dismissed as equitably moot where the relief requested does not seek to "unscramble" the underlying reorganization:

> We come to this determination not only on the basis of the individual factors themselves however, but also because the underlying purpose of the equitable mootness doctrine, which exists to 'prevent a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract,' is not implicated here.

*Id.* at 346-347 (*citing In re Nordhoff Invs. Inc. v. Zenith Elecs. Corp*, 258 F.3d. 180, 185 (3rd Cir.

2001)).

Here, as in the *Zenith* case, the equitable mootness doctrine's underlying purpose of preventing a court from unscrambling complex bankruptcy reorganizations is not implicated. The Committee has not requested and will not seek to compel Tennenbaum to pay greater consideration than Tennenbaum agreed to pay and the Debtors agreed to accept under the Asset Purchase Agreement. Pursuant to the Sale Order, Tennenbaum agreed to pay $7.3 million for professional fees. The Committee is not asking that Tennenbaum be obligated to pay more than it has already agreed to pay. Rather the Committee is challenging the ability of Tennenbaum and the Debtors to decide by private agreement, without regard to the mandates of the Bankruptcy Code, how that $7.3 million payment will be allocated amongst the Debtors' and the Committee's professionals.

If the Committee prevails on appeal, the total amount set forth in the Asset Purchase Agreement for payment of professional fees will be placed in a single pool and distributed on a *pro rata* basis, rather than being preallocated to certain professionals in a manner contrary to the equal priority afforded to administrative expenses under sections 503(b)(2) and 507(a)(1) of the Bankruptcy Code. Thus, from a transactional standpoint, nothing changes in the underlying sale. Tennenbaum pays the same consideration, the Debtors' estates receive the same consideration, and Tennenbaum receives the same assets. The only change post-appeal will be in the Debtors' distribution of the funds received from Tennenbaum for payment of professional expenses. Thus, the relief requested will not affect the success of the asset sale or the finality of the sale transaction. Equitable mootness is not implicated.

**B.    The Professional Fee Issues Are Ripe for Adjudication By This Court.**

Tennenbaum and the Debtors next argue that this appeal is not ripe for adjudication,

because the Bankruptcy Court has not yet ruled on the parties' respective professional fee applications. That argument confuses the ripe issues on appeal before this Court with separate and discrete issues still before the Bankruptcy Court. The Committee is not requesting this Court's approval of the amount or propriety of its professional fees; that is an issue still before the Bankruptcy Court in connection with the parties' fee applications. Rather, irrespective of what amounts the Bankruptcy Court ultimately allows for each parties' professionals, the Committee is requesting that this Court invalidate the allocation scheme implemented by the Debtors and Tennenbaum through private agreement in the Sale Order and Asset Purchase Agreement, which violates the priorities in the Bankruptcy Code and public policy by providing disparate treatment of administrative claims for professional fees.

Ripeness requires that the challenge at issue grow out of a "real, substantial controversy between the parties" involving a "dispute definite and concrete." *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298 (1979). The question is whether the facts "show that there is a substantial controversy, between parties having adverse legal interests 'of sufficient immediacy and reality' to justify judicial resolution." *Peachlum v. City of York, Penn.*, 333 F.3d 429, 434 (3rd 2003) (*quoting Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The Supreme Court has adopted a two-step test for determining ripeness, which looks at (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration. *Id.* at 434 (*citing Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967)). In this case, there are ripe issues separate and independent of the amount of the professional fees that the Bankruptcy Court ultimately allows under the parties' fee applications.

The ripe question before this Court is whether the Bankruptcy Court's approval of the private fee allocations set forth in the Sale Order and the Asset Purchase Agreement

impermissibly grants disparate treatment to the parties' respective professionals. That question lies at the heart of Issues 4 through 9 of the Committee's Statement of Issues on Appeal, which the Committee seeks to have expedited in the present appeal. Those issues involve a real controversy between the parties that is fit for immediate judicial decision. By approving the Sale Order and the Asset Purchase Agreement, the Bankruptcy Court effectively preapproved a maximum cap of $300,000 on the Committee's recoverable fees, and the $300,000 may not be used to pay for professional fees incurred with respect to this appeal.  No matter what percentage of the Committee's professional fees the Bankruptcy Court ultimately approves, that cap will remain in place, barring the Committee from obtaining its *pro rata* share of estate assets allocated for the payment of professional fees, to which the Committee would otherwise be entitled under sections 503(b)(2) and 507(a)(1) of the Bankruptcy Code.

In short, what is at issue in this appeal is not the amount of the Committee's professional fees, but the allocation of the $7.3 million set aside for payment of professional fees under the Asset Purchase Agreement. The Committee believes that amount should be allocated on a *pro rata* basis under the Bankruptcy Code; Tennenbaum and the Committee believe that it should be allocated in accordance with their private fee distribution agreement under the Asset Purchase Agreement. That is a real controversy now existing between the parties, and its resolution does not turn on how the Bankruptcy Court decides the parties' respective fee petition. Moreover, the Committee faces significant hardship if the Court does not rule on the professional fee issue at this point in the proceedings. As a result of the $300,000 cap approved by the Bankruptcy Court, which is substantially less than the Committee's accrued professional fees, and the restriction that the $300,000 may not be used for the appeal, the Committee is faced with circumstances in which it cannot pay its legal advisors and, therefore, may well be unable to continue its appeal.

8

This controversy is ripe for immediate adjudication.

### C.    The Committee Has Standing to Pursue its Appeal.

Tennenbaum further asserts incorrectly that the Committee does not have standing to pursue an appeal of the professional fee issues, because the Committee's professionals, not the Committee itself, are the parties with an interest in having their professional fees paid. That is a *non sequitur*. The Committee has an interest in obtaining competent professional advice, something it cannot do if its professionals are not paid. The Committee retained its professionals, and those professionals were approved by the Bankruptcy Court, for the purpose of providing the Committee with advice and professional services during the course of these proceedings. The Committee now seeks to pay its professionals for their services, and has a present interest in determining whether payment will be forthcoming from the Debtors' estates. The Committee also has an interest in obtaining continuing professional advice and professional services so that it can continue to participate in the pending appeals. The Committee has no ability to pay for legal services for this appeal so long as the $300,000 cap approved by the Bankruptcy Court remains in place. To suggest, therefore, that the Committee has no interest in the professional fee issue simply because it will not be the direct recipient of the professional fees is patently unreasonable.

Tennenbaum's position that the Committee lacks standing is also wrong as a matter of law. The Committee is granted standing in this case by the plain language of the Bankruptcy Code. The Committee is appointed by the Bankruptcy Court pursuant to 11 U.S.C. §§ 1102 and 1103, and is a party in interest with a right to be heard on any issue in the bankruptcy cases under 11 U.S.C. § 1109. Under section 1103, the Committee is granted authority to employ professionals to represent it in the bankruptcy case. If the Committee cannot pay those

professionals, the Committee will be without representation. Therefore, the Committee is a party in interest, whose interests have been directly impacted by the Bankruptcy Court's rulings. The Committee has standing to defend its right to employ professional advisors under section 1103.

### D.    The Committee's Professionals Are Not on Contingency.

Tennenbaum belittles the suggestion that the Committee may lack the ability to obtain competent professional representation if the question of professional fees is not resolved, arguing that the Committee's counsel was retained on a contingency fee basis, and that the Committee's counsel should continue to represent the Committee on that basis for the duration of the appeals. Indeed, Tennenbaum goes so far as to suggest that the Committee's counsel should be denied leave to withdraw as counsel for the Committee--something the Committee's counsel has not yet sought--on the basis of this supposed contingent fee arrangement.

There is simply no truth at all to Tennenbaum's suggestion that the Committee's counsel was retained on a contingency fee basis. Notably, Tennenbaum does not and cannot point this Court to any filing by the Committee, any order of the Bankruptcy Court, or any submission by the Committee or its counsel, to support the suggestion that the Committee's counsel agreed to perform millions of dollars' worth of professional services on a pure contingency basis. Instead, Tennenbaum points to several carefully selected quotations from the Bankruptcy Court, in which the Bankruptcy Court stated that its determination of the amount of fees that it would ultimately allow for the Committee's professionals could be affected by the outcome of the representation. That is hardly the same as a contingency fee arrangement.

The outcome of an adversary proceedings and the amount of value that it brings to the bankruptcy estates is, of course, one factor (though not the sole factor) that the Bankruptcy Court can consider in determining the allowable amount of a party's professional fees. Consequently,

the outcome of the proceedings below could have some effect on the amount of professional fees that the Bankruptcy Court ultimately allows for the Committee's professionals. That is an issue the Bankruptcy Court will decide when it rules on the parties' professional fee applications. Tennenbaum's attempt to transform the Bankruptcy Court's comments from the bench into a formal contingency fee arrangement, however, is disingenuous. The Committee's professionals have never agreed to work on a contingency basis. Moreover, as set forth in the Motion, the Bankruptcy Court itself approved carve-outs and budgets in connection with the debtor-in-possession financing orders to ensure that there would be a fund of real dollars available for the compensation of professionals, and drew no distinction between the Debtors' professionals and the Committee's professionals. Tennenbaum cannot credibly defend its position that the Committee's professionals agreed to represent the Committee on contingency, while at the same time making $7 million available for payment of the Debtors' professionals. That position is unsupportable on the record and on the law. The Committee's professionals are entitled to their *pro rata* share of approved professional fees and expenses under sections 503(b)(2) and 507(a)(1) of the Bankruptcy Code.

### E.    The Expedited Relief Requested Will Not Harm the Estates.

The Debtors assert that the relief requested by the Committee in its Motion will harm the bankruptcy estates. That is incorrect. If the Committee prevails, the net effect will be a *pro rata* distribution of the assets available in the bankruptcy estates for payment of professional fees, as contemplated by sections 503(b)(2) and 507(a)(1) of the Bankruptcy Code. Although the Debtors' professionals might receive less under that arrangement than they would have received under the Debtors' private allocation scheme with Tennenbaum, enforcing the priorities required by the Bankruptcy Code cannot credibly be characterized as "harm" to the bankruptcy estates.

Likewise, from a cost standpoint, the relief requested by the Motion does not harm the bankruptcy estates. The professional fee issues are discrete issues easily separable from the remainder of this appeal, so the parties do not lose or gain any efficiencies by briefing the professional fee issues in advance of the remaining issues on appeal. Only the timing of the appeals is affected, and the Debtors are not injured by resolving the professional fee issues first. The asset sale is already complete, and the progression of the appeals in a logical order of priority does not impede the ability of the Debtors to proceed with winding up the remainder of the bankruptcy estates while the appeals are pending.

**F.    The Motion complies with Bankruptcy Rule 8011.**

Finally, the Debtors' argument that the Committee failed to comply with Bankruptcy Rule 8011 is simply a red herring. The Debtors argue that the Committee failed to designate the Motion as an "emergency" motion or to provide an affidavit under Bankruptcy Rule 8011(d). The Motion, however, is not an "emergency" motion subject to Bankruptcy Rule 8011(d), but rather a motion filed under Bankruptcy Rule 8011(a) requesting relief in the form of an expedited briefing schedule of certain issues before the Court. Bankruptcy Rule 8011(a) states:

> (a) Content of motion; Response; Reply. A request for an order or other relief shall be made by filing with the clerk of the district court or the clerk of the bankruptcy appellate panel a motion for such order or relief with proof of service on all other parties to the appeal. The motion shall contain or be accompanied by any matter required by a specific provision of these rules governing such a motion, shall state with particularity the grounds on which it is based, and shall set forth the order or relief sought. If a motion is supported by briefs, affidavits or other papers, they shall be served and filed with the motion. Any party may file a response in opposition to a motion other than one for a procedural order within seven days after services of the motion, but the district court or the bankruptcy appellate panel may shorten or extend the time for responding to a motion.

Just as a routine motion for payment of administrative expenses requests the Bankruptcy Court to grant certain relief, the Motion of the Committee requests the relief of quick briefing

schedule on the professional fee issues. The Motion was not titled "emergency motion" because it was not one. The Committee has complied with the requirements of Rule 8011(a) for bringing a normal motion before this Court on a non-emergency basis.

WHEREFORE, the Committee respectfully requests that this Court enter an order: (1) granting an expedited appeal of Issues 4 through 9 set forth in the Committee's Statement of Issues on Appeal; (2) staying the remaining issues on appeal pending resolution of the expedited appeal; (3) setting an expedited briefing schedule upon terms that comport with the interests of justice; and (4) granting such further relief as is just and proper.

Dated: February 7, 2007        GREENBERG TRAURIG, LLP

*Victoria N Counihan*

Donald J. Detweiler (No. 3087)
Victoria Counihan (No. 3488)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
detweilerd@gtlaw.com
counihanv@gtlaw.com

-and-

Nancy A. Mitchell
Nancy A. Peterman
Francis A. Citera
**GREENBERG TRAURIG LLP**
77 West Wacker Drive, Suite 2400
Chicago, Illinois 60601
Phone: (312) 456-8400
Facsimile (312) 456-8435
mitchelln@gtlaw.com
petermann@gtlaw.com

Counsel for the Official Committee of Unsecured Creditors of Radnor Holdings Corporation, *et al.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **RADNOR HOLDINGS** | § | **Case No. 06-10894-(PJW)** |
| **CORPORATION**, *et al.*, | § | **Jointly Administered** |
| | § | |
| **Debtors.** | § | |
| | § | |
| | § | |
| **THE OFFICIAL COMMITTEE OF** | § | **Civil Action No. 06-782 (***)** |
| **UNSECURED CREDITORS OF RADNOR** | § | |
| **HOLDINGS CORPORATION**, *et al.*, | § | |
| | § | |
| **Appellant,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **TENNENBAUM CAPITAL PARTNERS,** | § | |
| **LLC,** | § | |
| | § | |
| **Appellee.** | § | |

**ORDER GRANTING MOTION OF APPELLANT FOR LEAVE TO FILE
CONSOLIDATED REPLY TO APPELLEES' OPPOSITION TO MOTION TO
EXPEDITE APPEAL OF ISSUES 4 THROUGH 9 RELATING TO COMPENSATION
OF COMMITTEE'S PROFESSIONAL ADVISORS, AND TO STAY ALL OTHER
ISSUES ON APPEAL PENDING RESOLUTION OF THE EXPEDITED APPEAL**

Upon the motion (the "**Motion**") of Appellant, the Official Committee of Unsecured Creditors of Radnor Holdings Corp., *et al.* (the "**Committee**"), by and through its undersigned counsel, for entry of an Order granting it leave to file its consolidated reply to the opposition of Tennenbaum Capital Partners, LLC, Special Value Expansion Fund, LLC, Special Value Opportunities Fund, LLC and Jose E. Feliciano (collectively, "**Tennenbaum**") and the objection of the Debtors (together, the "**Objections**") to the Committee's motion to expedite the appeal of Issues 4 through 9 relating to the compensation of the Committee's professional advisors, and to stay all other issues on appeal pending resolution of the expedited appeal (the "**Reply**"); and

upon reviewing and considering the Motion; and it appearing that the Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157(b)(2)(A); and due and adequate notice of the Motion having been given; and it appearing that no other or further notice need be given; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.    The Motion shall be, and hereby is, granted.

2.    The Committee is granted leave to file its Reply.

3.    The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Date: _____

_____
UNITED STATES DISTRICT COURT JUDGE